IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LONNIE WILLIAMS,

      Plaintiff,                               No. CIV S-11-0426 GEB EFB P

      vs.

GOMEZ, et al.,

      Defendants.                     FINDINGS AND RECOMMENDATIONS

/

       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Plaintiff has filed a motion for preliminary injunctive relief, together with an affidavit stating that she[1] is being poisoned daily by defendants and co-conspirators and is in imminent danger of irreparable harm, injury and death. Dckt. No. 13. Plaintiff's complaint alleges that defendants are poisoning and spitting in her food, which makes her severely ill. Dckt. No. 1 at 4. She has further alleged that defendants have denied her medical care for the poisoning and are not providing her with her HIV medication. *Id.*

       The court ordered defendants to respond to the merits of plaintiff's allegations and address whether the court should grant injunctive relief. Dckt. No. 14. Defendants have

---

[1] Plaintiff is transgender and prefers to be referred to as "she." Some of the medical records quoted in this opinion refer to plaintiff as "he."

1

complied with the order. Dckt. No. 15. Plaintiff has filed a reply brief and an accompanying affidavit. Dckt. Nos. 16, 17. Plaintiff has also filed documents reiterating her allegations. Dckt. Nos. 22, 25.

Plaintiff alleges that she has been "getting poisoned, deliberately, in retaliation for filing grievances and civil actions, constantly and daily by prison officials conspiring with defendants." Dckt. No. 13 at 12. She states that certain prison officials refuse to give her medical treatment, that she is being poisoned daily, not treated, and is in imminent danger of irreparable harm, injury and death. *Id.* She asks that the court order her to be transferred to Mule Creek, Donovan or Lancaster state prisons and ensure that she not be harassed by a list of specified people. *Id.* at 14-16.

Plaintiff's complaint contains the following allegations relevant to her motion. *See* Dckt. No. 1. Certain defendants conspired to spit saliva and put poison, which plaintiff believes is arsenic, into her food, in order to kill her in retaliation for filing grievances. *Id.* at 4. Plaintiff became severely ill with the following symptoms: "vomiting, dizziness, severe headache, abdominal pains, rectum bleeding, infection in the urine, enlarged prostate and bladder, itching scalp and skin, dehydration, flakey scalp, and constipation." *Id.* at 5. Although plaintiff submitted a request for medical treatment, a defendant intercepted it so that it did not reach medical personnel. *Id.* Defendants deprived plaintiff of her HIV medication. *Id.* Plaintiff attaches a "Health Care Services Request Form" showing that she has complained that defendants spit saliva and put poison into her food, and asks that she be given an "emergency medical appointment and a heavy metal toxicology urine and blood analysis." *Id.* at 8.

Defendants' response states plaintiff is not being and has not been poisoned and is receiving her HIV medication. As to the poisoning issue, defendants submit the declaration of Dr. Bobbala.[2] Dckt. No. 15-1 at 3. Bobbala states that plaintiff presented to medical staff on

---

[2] Although Dr. Bobbala is not a defendant in this lawsuit, plaintiff has apparently filed grievances against her. *See* Dckt. No. 15-1 at 14 (doctor's record stating "Reviewing the records

1  May 21, 2011 complaining of being poisoned, but there was "no evidence of symptoms of
2  poisoning"[3] and plaintiff was referred for psychological evaluation. *Id.* Bobbala also declares
3  that plaintiff's "medical records contain no evidence of any treatment . . . for arsenic poisoning
4  or a report/indication that she presented with any symptoms of arsenic or other poisoning." *Id.*
5  The record Bobbala references states "this has been followed up as a 602 which was denied" and
6  "Dr. Moghaddan will not order toxicology testing. Refer to psych for paranoid ideation
7  evaluation." *Id.* at 6. A second record states "this same complaint was 602'd and denied. Will
8  refer to psych." *Id.* at 7.

9  Defendant Minton, whom plaintiff alleges spit into and poisoned her food, declares that
10 he has never spat in food that he delivered to any inmate, including plaintiff, and that he did not
11 put poison in plaintiff's food. Dckt. No. 15-3 at 3. Defendants also submit the declaration of J.
12 Ridge, a correctional food manager at CSP SAC. Dckt. No. 15-3 at 5. Ridge declares that food
13 is cooked in mass volume and is stored in large capacity containers, so that "it would not be
14 feasible or possible, at the time of cooking, to determine what portion of food would be destined
15 for service to a specific inmate." *Id.* Ridge declares that individual portions of food are put on a
16 food tray, and each tray is then covered with another interlocking food tray, and the meals are
17 placed on a bread rack for distribution by correctional officers in the housing units. *Id.* at 6. He
18 declares that it would not be possible for a kitchen staff member to tamper with food destined for
19 a specific inmate. *Id.*

---

21 shows that he had a bad encounter with Dr. Bobbala during the last visit on 03/18/2011 when he
   had to be escorted out of the room. Upon arrival he seems very upset and he continues with the
22 same tone and that Dr. Bobbala has stopped his medication. He is upset and he is suffering and
   he is on a strict regimen and Neurontin was part of his strict regimen"; *id.* at 25 (internal appeal
23 stating, "Because she does not believe in treating persons who are transsexual (as I am) (M.D.)
   Manjula Bobbala . . . do not order me to see a transsexual specialist and telemedicine scheduled
24 ordered."

25  [3] It is unclear how Dr. Bobbala reached the conclusion that plaintiff did not have
    symptoms of poisoning, considering that she does not appear to have been present at the
26  examination and there is no indication on the medical record regarding plaintiff's symptoms.
    The court affords this statement little probative value.

Plaintiff's response brief states that medical personnel refuse to test her to determine whether she has been poisoned. Dckt. No. 16 at 2. She states that the test "cannot be made by just a visual look [but] only [through] the proper heavy metal toxicologist blood and urine analysis, which were never done." *Id.* She declares under penalty of perjury that "medical personnel[] and Bobbala have never attempted to test, treat, or even care for, or provide the plaintiff any medical treatments, care or examinations that are consistent with providing the plaintiff with a emergency required heavy metal toxicology blood and urine tests and analysis." *Id.* at 13. She attaches a lab result from September 12, 2006, showing that the arsenic level in her blood was < 10 mcg/L, which is not listed as an "abnormal" result. *Id.* at 10. The document states that the reference range is < 25 mcg/L, but that "levels up to 70 mcg/L can result from consumption of seafood." *Id.*

Regarding plaintiff's allegations that she has been denied her HIV medication, defendants argue that plaintiff has been properly prescribed HIV medication, and that her medication administration records show that "she has in fact received the prescribed atripla continually since January 1, 2011." Dckt. No. 15 at 2. Defendants have submitted copies of records indicating that someone initialed a box showing that plaintiff was provided her HIV medication every day from 1/1-2/3, 2/4-2/10, 2/11-3/4, 3/5-3/22, 3/23-4/1, 4/2-4/28 (although notes on 4/19 and 4/28 state that plaintiff refused her medication), 5/5-5/24,[4] 5/25-6/1, and 6/2-6/5. Dckt. No. 15-2 at 46-54.

Plaintiff has submitted an affidavit dated June 16, 2011, declaring that she was denied her HIV medication from the afternoon of June 14 until June 16 because she refuses to drink water from the psychiatric technician assistant and supervising page. Dckt. No. 17 at 2. She declares that she cannot miss any doses of her HIV medication regimen because her body can grow to resist the regimen and contract AIDS. *Id.* at 3. She does not dispute that she received

---

[4] This record is somewhat illegible as to the last few dates.

4

1  medication on the days listed in the medical records provided by defendants.

2      To be entitled to preliminary injunctive relief, a party must demonstrate "that he is likely
3  to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary
4  relief, that the balance of equities tips in his favor, and that an injunction is in the public
5  interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v.*
6  *Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)).  The Ninth Circuit has also held that the
7  "sliding scale" approach it applies to preliminary injunctions as it relates to the showing a
8  plaintiff must make regarding his chances of success on the merits survives *Winter* and continues
9  to be valid.  *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("'serious
10 questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff
11 can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a
12 likelihood of irreparable injury and that the injunction is in the public interest.").  *Id.*

13     In cases brought by prisoners involving conditions of confinement, any preliminary
14 injunction "must be narrowly drawn, extend no further than necessary to correct the harm the
15 court finds requires preliminary relief, and be the least intrusive means necessary to correct the
16 harm." 18 U.S.C. § 3626(a)(2).

17     Here, plaintiff has not met her burden of showing that a preliminary injunction is
18 warranted.  Notably, she has not demonstrated that she is likely to succeed on the merits.
19 Plaintiff has submitted no evidence, other than her own declaration, to support her contentions
20 that defendants have poisoned her or denied her HIV medication.  The laboratory report from
21 2006 that plaintiff has submitted shows that the arsenic level in her blood was within normal
22 limits, despite plaintiff's claim that it proves that she has been poisoned in the past.  Plaintiff's
23 declaration stating that she has been poisoned with arsenic is of little probative value, as it
24 appears to be based solely on conjecture and suspicion.  She does not claim that she saw
25 defendants poisoning her food or that anyone told her that her food was poisoned.  Although
26 plaintiff declares that she has a number of debilitating physical symptoms, her medical records

reflect that she is HIV positive and has other known health problems, which suggests that there may be alternate explanations for her symptoms.  In addition, defendant Minton declares that he has not poisoned plaintiff.  There is no reason to believe plaintiff's declaration over Minton's declaration.

Nor has plaintiff convincingly demonstrated that she has been denied her HIV medication.  Her most recent filing states that she has refused to take the medication because she does not want to drink the water provided to her by prison officials.  Defendants' records show that she has consistently been offered her HIV medication, although she has sometimes refused to take it.

Accordingly, plaintiff has not demonstrated that she is likely to succeed on the merits of her claims.  In other words, without a more convincing and fact-specific declaration explaining why plaintiff believes that she is being poisoned or actually claiming that she was not offered her HIV medication, there do not appear to be "serious questions going to the merits."  For the same reasons, plaintiff has not demonstrated that she will suffer irreparable harm in the absence of preliminary injunctive relief or that the balance of equities tips in her favor.  Because plaintiff has not made a convincing showing that she is being poisoned or denied HIV medication, the court is not convinced that irreparable harm will result if her motion is denied or that the balance of equities tips in her favor.  Neither has plaintiff made a showing that the injunction she seeks is in the public interest.  Plaintiff's motion for injunctive relief should therefore be denied.

Accordingly, it is hereby RECOMMENDED that plaintiff's motions for injunctive relief, Dckt. Nos. 13, 22, 25, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

1 | within the specified time may waive the right to appeal the District Court's order. *Turner v.*
2 | *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
3 | Dated: August 1, 2011.

*/s/ Edmund F. Brennan*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE